**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHARLES HUDSON and | : | Civil Action No. 04-6438(NLH) |
| DEBRA HUDSON, | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | **OPINION** |
| | : | |
| SIEMENS LOGISTICS AND | : | |
| ASSEMBLY SYSTEMS, INC., | : | |
| HK SYSTEMS, INC., and | : | |
| EATON CORPORATION, | : | |
|     Defendants, | : | |
| | : | |
| HK SYSTEMS, INC., | : | |
|     Defendant/Third-Party | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| EATON CORPORATION, | : | |
|     Defendant/Third-Party | : | |
|     Defendant. | : | |

**APPEARANCES:**

Robert George Devine, Esquire
Christopher P. Morgan, Esquire
White & Williams, LLP
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220

    *On behalf of HK Systems, Inc.*

Cy Goldberg, Esquire
Goldberg Miller & Rubin, LLC
121 South Broad Street
Suite 1500
Philadelphia, PA 19107

Darren J. Hunter, Esquire
Dewey & LeBoeuf
Two Prudential Plaza
180 North Stetson Avenue, Suite 1175
Chicago, IL 60601-6783

    *On behalf of Eaton Corporation*

**HILLMAN**, District Judge

     This matter has come before the Court on the summary judgment motions of Defendant/Third-Party Plaintiff HK Systems, Inc. and Defendant/Third-Party Defendant Eaton Corporation.  For the reasons expressed below, HK Systems Inc.'s motion will be granted, and Eaton Corporation's motion will be denied.

**BACKGROUND**

     On February 13, 2004, plaintiff Charles Hudson, who was a warehouse control analyst at the Exxon-Mobil Plant located in Paulsboro, New Jersey, was injured on the job when an automated guided vehicle ("AGV") struck him and pinned him against a conveyer system.  On November 15, 2004, Hudson filed a complaint in New Jersey state court against defendant Siemens Logistics and Assembly Systems, Inc. ("Siemens") and HK Systems, Inc. ("HK"). The case was removed to this Court on December 29, 2004, and on August 15, 2005, HK filed a third-party complaint against Eaton Corporation ("Eaton").  On September 13, 2005, the Hudsons filed an amended complaint, adding Eaton as a defendant.

     The claims between the Hudsons and the first-party defendants have been resolved--the Hudsons dismissed their claims against Siemens and HK and settled with Eaton--and what remains pending for resolution are HK's third-party claims against Eaton. Specifically at issue is whether Eaton is responsible for the attorneys' fees and costs HK incurred as a result of defending

2

against the Hudsons' claims against it, and, correspondingly, the fees and costs HK has incurred as a result of the prosecution of this claim.

The parties' dispute revolves around an asset purchase agreement ("APA"), which was entered into on January 12, 1995 between Eaton-Kenway, Inc., a former subsidiary of Eaton, and Harnischfeger Engineers, Inc.  As a result of the APA, the assets of Eaton-Kenway were sold to Harnischfeger, and a new entity, HK, was formed.  The APA sets forth indemnification provisions delineating liability for certain occurrences happening prior to the execution date of the APA and after the execution of the APA. Pursuant to the agreement, Eaton is liable for certain things arising out of the time period before January 12, 1995, and HK is liable thereafter.

The conveyer system and AGV, which Mr. Hudson claims injured him, and which are part of a larger material handling system, were designed, built and installed by Eaton-Kenway between 1989 and 1991.  When HK was served with the Hudsons' complaint, it tendered its defense to Eaton, stating that because Eaton manufactured the AGV that struck Mr. Hudson in 1991, Eaton was required to hold harmless and indemnify HK pursuant to the APA. HK interpreted the APA indemnification provision to require that Eaton must provide HK with a defense, or reimburse HK for its legal fees and costs in the event that Eaton declined the tender.

Eaton chose to decline HK's tender, and it now disputes that it is responsible for HK's legal fees and costs.  Eaton argues that the APA does not impose on it a duty to defend HK.  Instead, Eaton argues that the APA provides that each party pay for its own defense, and that under certain circumstances, one party would be required to indemnify the other.  Eaton interprets the indemnification provision to only provide for indemnification for certain events arising prior to January 15, 1995, and the "indemnification" does not include attorneys' fees and costs. Further, Eaton argues that the APA does not contemplate that Eaton would be responsible for HK's post-APA acts or omissions, including attorneys' fees.

The parties agree that the resolution of this issue is a matter of law, and as such, it is ripe for a summary judgment.

## DISCUSSION

**A.    Jurisdiction**

This Court's jurisdiction is pursuant to 28 U.S.C. § 1332.

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

4

**B.   Analysis**

Each party advances numerous arguments for its position.[1]

The main point of contention is whether Eaton had a duty to

accept HK's defense when it was tendered to Eaton, and as a

result of Eaton's rejection of that tender, whether Eaton is

liable for all of HK's attorneys' fees and costs, for both its

defense of the Hudsons' claims against HK, as well as HK's

prosecution of its indemnification rights against Eaton.

HK argues that pursuant to the plain language of Section

10.1 of the APA, Eaton had a duty to indemnify HK from the time

HK tendered its defense to Eaton.  HK contends that this duty to

indemnify includes payment for attorneys' fees and costs.

Because Eaton rejected its tender, HK argues that pursuant to

Section 10.3, Eaton is now responsible for all of its legal

expenses.

Eaton, however, contends that the indemnification is limited

---

[1]One of HK's arguments is that Eaton did not timely file its
motion for summary judgment, and as such, it should not be
considered.  Eaton vigorously disputes HK's contention that it
filed its motion late.  The Court will not consider this
argument.  See Foman v. Davis, 371 U.S. 178, 181-182 (1962)
(quoting Conley v. Gibson, 355 U.S. 41, 48 (1957) and citing Fed.
R. Civ. P. 1) ("It is too late in the day and entirely contrary
to the spirit of the Federal Rules of Civil Procedure for
decisions on the merits to be avoided on the basis of such mere
technicalities. 'The Federal Rules reject the approach that
pleading is a game of skill in which one misstep by counsel may
be decisive to the outcome and accept the principle that the
purpose of pleading is to facilitate a proper decision on the
merits.' The Rules themselves provide that they are to be
construed 'to secure the just, speedy, and inexpensive
determination of every action.'").

only to pre-APA events.  Based on the Hudsons' complaint and
amended complaint, it was not clear, until the Hudsons served
their expert report on March 30, 2007, and then subsequently
dismissed their claims against HK, whether they were claiming
their injuries arose from pre- or post-APA events.  Because it
was not until March 30, 2007 that is was made clear that the
Hudsons' claims arose from pre-APA events, the attorneys' fees HK
incurred were a result of defending itself against potential
post-APA events.  Therefore, because HK never faced liability for
the claims against Eaton's, but rather only for claims against
it, Eaton argues that it was not then, and ultimately never could
be, obligated to indemnify HK.  Furthermore, Eaton claims that it
never had a duty to defend, but only a potential duty to
indemnify.  Eaton also claims that it is not required to
indemnify HK because HK did not cooperate with Eaton in
discovery, which is required by the APA.[2]

Section 13.10 of the APA provides that Wisconsin law should
govern the terms of the agreement.  (APA, Art. XIII, 13.10.)
Under Wisconsin law, when the language of a contract is
unambiguous, a court must apply its literal meaning.  <u>Markwardt</u>

---

[2]Eaton also argues that HK's claim for indemnification is
barred by New Jersey's Statute of Repose.  This argument is
addressed separately below.

With regard to Eaton's argument that HK refused to
cooperate, as discussed below, even though good faith and comity
should prevail in such situations, the APA only requires HK to
cooperate if Eaton has provided HK with a defense.

<u>v. Zurich American Ins. Co.</u>, 724 N.W.2d 669, 681 (Wis. Ct. App.

2006).   In Article X of the APA, there are two indemnification

provisions--"Indemnification of the Buyer [HK]" and

"Indemnification of the Seller [Eaton]."   (APA, Art. X, 10.1,

10.2.)   The first indemnification provision provides that Eaton

will hold HK harmless from and against any and all damages,

losses, deficiencies, actions, demands, judgments, costs and

expenses (including attorneys' and accountants' fees) of or

against HK resulting from any act or omission of Eaton, or any

occurrence of a matter with respect to the Subject Assets or the

Subject Business, relating to or arising out of the period on or

before January 12, 1995, including without limitation, any claim

for personal injury.   (APA, Art. X, 10.1.[3])   The APA contains the

---

[3]The full text of the provision whereby Eaton is to
indemnify HK provides,

> Eaton . . . shall . . . hold [HK] harmless from and
> against any and all damages, losses, deficiencies,
> actions, demands, judgments, costs and expenses
> (including attorneys' and accountants' fees) of or
> against . . .[HK] resulting from (i) any
> misrepresentation or breach of warranty hereunder on
> the part of [Eaton], (ii) any nonfulfillment of any
> agreement or covenant contained herein or in any of the
> Seller Ancillary Documents, on the part of [Eaton],
> including without limitation, any failure to pay or
> satisfy any of the Excluded Liabilities, and (iii) any
> act or omission of [Eaton] or any occurrence of a
> matter with respect to the Subject Assets or the
> Subject Business relating to or arising out of the
> period on or before the Closing Date, including without
> limitation, any claim related to any work performed by
> the [Eaton] under the Coke Agreement or any of the
> other Projects, any other claim for nonperformance or
> breach of contract, any claim for worker's compensation

identical provision whereby HK will hold Eaton harmless for the period after January 12, 1995.  (APA, Art. X, 10.2.[4])  In essence, Eaton has agreed to be liable for anything that it did or was responsible for prior to January 12, 1995, and HK has agreed that it would be liable for anything that it did or was responsible for after January 12, 1995.

The APA also provides guidance on the procedures for fulfilling each parties' indemnification obligations.  (APA, Art. X, 10.3.[5])  First, if one party believes that it is entitled to

---

or unemployment compensation, and/or any claim for
personal injury or property damage.

(APA, Art. X, 10.1.)

[4]The full text of the provision whereby HK is to indemnify
Eaton provides,

[HK] shall indemnify [Eaton] . . . and hold [Eaton]
harmless from and against any and all damages, losses,
deficiencies, actions, demand, judgments, costs and
expenses (including attorneys' and accountants' fees)
of or against . . . [Eaton] resulting from (i) any
misrepresentation or breach of warranty hereunder on
the part of [HK], (ii) any nonfulfillment of any
agreement or covenant contained herein or in any of
Buyer Ancillary Documents on the part of [HK], and
(iii) any act or omission of [HK] or any occurrence of
a matter with respect to our arising out of the period
after the Closing Date, including without limitation,
any claim for nonperformance or breach of contract, any
claim for worker's compensation or unemployment
compensation, and/or claims for personal injury or
property damage.

(APA, Art. X, 10.2.)

[5]The full text of the procedures relative to indemnification
provide,

8

(a)   In the event that any party hereto shall claim
that it is entitled to be indemnified pursuant to the
terms of this Article X, it (the "Claiming Party")
shall so notify the party against which the claim is
made (the "Indemnifying Party") in writing of such
claim within 30 days after discovery of the facts
supporting a claim or receipt of notice of any claim of
a third party (a "Third Party claim") that may
reasonably be expected to result in a claim by such
party against the party to which such notice is given,
as the case may be; provided, however, that failure to
give such notification shall not affect the
indemnification provided hereunder except to the extent
the Indemnifying Party shall have been actually
prejudiced as a result of such failure.  Such notice
shall specify the breach of representation, warranty,
agreement or covenant claimed by the Claiming Party and
the liability, loss, cost or expense incurred by, or
imposed upon the Claiming Party on account thereof.  If
such liability, loss, cost or expense is liquidated in
amount, the notice shall so state and such amount shall
be deemed the amount of the claim of the Claiming
Party.  If the amount is not liquidated, the notice
shall so state and in such event a claim shall be
deemed asserted against the Indemnifying Party on
behalf of the Claiming Party, but no payment shall be
made on account thereof until the amount of such claim
is liquidated and the claim is finally determined.

(b) The Indemnifying Party may, upon receipt of written
notice of a Third Party Claim and at its expense,
defend such claim in its own name or, if necessary, in
the name of the Claiming Party.  The Claiming Party
will cooperate with and make available to the
Indemnifying Party such assistance and materials as may
be reasonably requested of it, and the Claiming Party
shall have the right, at its expense, to participate in
the defense.  The Indemnifying Party shall have the
right to settle and compromise such claim only with the
consent of the Claiming Party.  If the proceeding
involves a matter solely of concern to the Claiming
Party in addition to the claim for which
indemnification under this Article X is being sought,
such matter shall be within the sole responsibility of
the Claiming Party and its counsel.

(c) In the event the Indemnifying Party shall notify

9

indemnification from the other party, the claiming party is

required to notify the indemnifying party within thirty days of

discovering that need for indemnification.  Once the indemnifying

party has received notice from the claiming party, the

indemnifying party may defend the claim at its expense, or it may

refuse to provide a defense.  If the indemnifying party provides

a defense, the claiming party must cooperate with the

indemnifying party in providing that defense, or it may

participate in the defense at its own expense.  If the

indemnifying party refuses to provide a defense, the claiming

party has the right to conduct its own defense, and once the

claim is liquidated, it may file suit against the indemnifying

---

the Claiming Party that it disputes any claim made by
the Claiming Party and/or it shall refuse to conduct a
defense against a Third Party Claim, then the Claiming
Party shall have the right to conduct a defense against
such claim and shall have the right to settle and
compromise such claim without the consent of the
Indemnifying Party.  Once the amount of such claim is
liquidated and the claim is finally determined, the
Claiming Party shall be entitled to pursue each and
every remedy available to it at law or in equity to
enforce the indemnification provisions of this Article
X and, in the event it is determined, or the
Indemnifying Party agrees, that it is obligated to
indemnify the Claiming Party for such claim, the
Indemnifying Party agrees to pay all costs, expenses
and fees, including all reasonable attorneys' fees
which may be incurred by the Claiming Party in
attempting to enforce indemnification under this
Article X, whether the same shall be enforced by suit
or otherwise.

(APA, Art. X, 10.3.)

party to enforce its indemnification rights.   If it is determined that the indemnifying party was obligated to indemnify the claiming party, the indemnifying party is required to pay all costs, expenses and fees, including attorneys' fees the claiming party incurred in attempting to enforce the indemnification agreement.

HK was served with the Hudsons' complaint on December 1, 2005.   About a month later, believing that it was entitled to indemnification on the Hudsons' claims against it because the AGV that struck Mr. Hudson was manufactured by Eaton in 1991, HK notified Eaton by letter of the claim.   (HK's Ex. E.)   In April 2005, Eaton responded to HK that it required HK's cooperation in evaluating its request for indemnification and defense.   (HK's Ex. F.)   In August 2006, Eaton notified HK that it would accept HK's tender of defense, and would defend and indemnify HK, but only upon certain conditions, including HK agreeing to waive any claim for legal fees it had incurred.   (HK's Ex. G.)   HK did not accept this offer, and Eaton has refused to indemnify HK.   Thus, the disputed issues is whether HK is entitled to indemnification by Eaton, and, if so, to what extent.

As a primary matter, Eaton argues that the APA only provides a right for indemnification, not to a right to a defense.   Eaton is correct if it is arguing that the APA does not impose a duty onto the indemnifying party to affirmatively take on the claiming party's defense.   The APA contemplates that the indemnifying

party has the choice of whether to provide the claiming party
with a defense or not.  Because the indemnifying party has the
option to not provide a defense, the APA does not specifically
impose a duty to defend onto the indemnifying party.  Thus, Eaton
is right when it states that it did not have a duty to defend HK-
-that is, a duty to accept HK's tender and hire counsel on its
behalf.

The APA does provide the right to a defense, however, if
that right is to mean that the indemnifying party is found to be
liable for the defense costs of the claiming party.  In the APA's
indemnification provisions, Eaton pledged that it would hold HK
harmless for any costs and expenses, including attorneys' fees,
on any claim for personal injury resulting from Eaton's conduct,
or arising out of the business prior to January 15, 1995.  Thus,
HK has the right to be reimbursed for its defense costs relating
to the Hudsons' personal injury claim if those claims were caused
by Eaton or arose out of the business assets that was there prior
to January 15, 1995.

To resolve that issue, the Hudsons' pleadings must be
considered.  Eaton construes the pleadings to impose potential
liability onto both Eaton and HK from the date the Hudsons'
original complaint was filed, until March 30, 2007 when the
expert report revealed that the Hudsons' claims only pertained to
pre-APA conditions.  Up until that time, Eaton argues that HK
faced potential liability for post-APA conditions because of the

broad nature of the Hudsons' pleadings, the fact that the accident occurred in February 2004, nine years after the APA went into effect, and because even though Eaton designed and manufactured the AGV, HK had performed continuous maintenance and repairs on the AGV since January 1995.  Eaton argues that because HK faced liability for its own conduct, there was nothing for Eaton to indemnify.  Furthermore, Eaton argues that because HK was ultimately dismissed from the case, there never was any liability for Eaton to have assumed, and, thus, it is not responsible for any attorneys' fees HK incurred.

HK argues, however, that because the Hudsons' complaint is clearly premised on theories of design defect, Eaton unreasonably decided that it needed more information before it could determine whether the allegations related to conditions from prior to the closing date of the APA.  Furthermore, even after it received thousands of documents, Eaton continued to deny its contractual obligation to indemnify HK.  Additionally, with regard to Eaton's claim that the Hudsons' claims were not clear until March 30, 2007 when they served their expert report, HK argues that nothing in the report changed what had already been apparent about the theory of the Hudsons' claims.  Finally, HK argues that because it was ultimately determined that the Hudsons had no claims against HK, but rather solely against Eaton, HK should not be responsible for any of its fees and costs since those costs arose from defending against pre-APA claims.

13

As stated above, the APA permitted Eaton to not provide HK with a defense.  The issue, then, is whether Eaton is responsible for the attorneys' fees and costs HK has incurred because of Eaton's decision not to defend.

Even though the language of the APA is not ambiguous, the APA is silent on how to proceed during the gray period when both HK and Eaton are both potentially liable.  HK essentially argues that the APA provides for a retrospective determination of liability--that is, because it was ultimately determined that Eaton, and not HK, was the target of the Hudsons' claims, Eaton should be responsible for all of HK's defense costs.  Conversely, Eaton essentially advocates a prospective determination of liability, where regardless of the ultimate outcome, if both parties face potential liability, each must bear its own expenses up until the point when it becomes clear on which party liability lies.

The Hudsons' pleadings provided a basis for Eaton's approach.  In their original complaint, the Hudsons did not assert any claims against Eaton.  In their amended complaint, which added Eaton as a defendant, the Hudsons did not delineate their claims between Eaton and HK, and instead made all their claims against "Defendant HK and/or Eaton-Kenway."  Thus, on the face of the pleadings, HK and Eaton both faced potential liability.

The problem with Eaton's "prospective" approach, however, is

14

that it is not supported by the plain language and purpose of the
APA.  That approach would essentially require the parties to make
cross tender-of-defense requests every time a lawsuit named both
Eaton and HK as defendants, which would render Section 10.3
meaningless.  Furthermore, instead of the APA closing date being
the bright-line guidepost for determining which party must
indemnify the other, Eaton's approach would impose a dual
liability until some unknown time in the discovery process when
it was determined which party was responsible, which would cause
that responsible party to never fully indemnify the other.

In contrast, the "retrospective" approach is supported by
the language in the APA, in that it provides a remedy for the
indemnitee to recover for its expenses in defending against a
claim for which the indemnitor is liable.  The retrospective
approach also supports the ultimate purpose of the
indemnification provisions--that the responsible party must
assume all the burden.  This approach also addresses the
perceived unfairness of one party paying for the defense of
another party while both parties are potentially liable--in the
end, if it is determined that a third-party's claims arose out of
both pre- and post-APA conditions, HK and Eaton would each bear
the costs of its own liability.  If, however, post-APA
conditions, for which HK is responsible, are determined not to
be, and never were, the cause of a third-party's injuries, then
the APA provides that Eaton must fully indemnify HK for claims

arising from those injuries.  Any other result would contradict

the plain meaning and purpose of the APA.[6]  <u>See</u> <u>Barrons v. J.H.</u>

<u>Findorff & Sons</u>, 278 N.W.2d 827, 831 (Wis. 1979) (stating that

indemnity agreements are valid and are not against public policy,

and that the agreement will be broadly construed where indemnity

is sought for liability based on the indemnitor's negligence).

    Consequently, under the terms of the APA, Eaton is required

to indemnify--i.e., reimburse--HK for its attorneys' fees and

costs in defending the Hudsons' claims, as well as in prosecuting

its claim for indemnification.

**C.    Whether New Jersey's Statute of Repose bars HK's claims**

    Eaton advances another argument for why it is not

responsible for HK's attorneys' fees.  Eaton argues that New

Jersey's Statute of Repose ("SOR") bars HK's claim.  The SOR

provides,

> No action, whether in contract, in tort, or otherwise,
> to recover damages for any deficiency in the design,

---

[6]Both Eaton and HK discuss a case decided by Judge Adelman
in the Eastern District of Wisconsin.  <u>HK Systems, Inc. v. Eaton</u>
<u>Corporation</u>, Civ. Action No. 02-1103 (E.D. Wisc. June 18, 2007.)
There, as here, HK claimed that Eaton breached its duty to
indemnify under the APA.  In the Wisconsin case, HK sought
indemnification from Eaton for claims that arose from a contract
with a third party that was negotiated prior to the APA closing
date, but entered into after the APA closing date.  Even though
Judge Adelman considered the same provisions in the APA that are
at issue here, it was in a different context.  Neither party has
raised *res judicata* issues, and it appears that Judge Adelman's
opinion is not dispositive to the issues here.  Thus, the
Wisconsin case does not inform this Court's analysis of the
issues before it.

planning, surveying, supervision or construction of an
improvement to real property, or for any injury to
property, real or personal, or for an injury to the
person, or for bodily injury or wrongful death, arising
out of the defective and unsafe condition of an
improvement to real property, nor any action for
contribution or indemnity for damages sustained on
account of such injury, shall be brought against any
person performing or furnishing the design, planning,
surveying, supervision of construction or construction
of such improvement to real property, more than 10
years after the performance or furnishing of such
services and construction. This limitation shall serve
as a bar to all such actions, both governmental and
private, but shall not apply to actions against any
person in actual possession and control as owner,
tenant, or otherwise, of the improvement at the time
the defective and unsafe condition of such improvement
constitutes the proximate cause of the injury or damage
for which the action is brought.

N.J.S.A. 2A:14-1.1.

Eaton contends that the entire mail handling system, of
which the AGV that struck Mr. Hudson is a part, was an
improvement to real property designed and installed by Eaton-
Kenway in 1991.  Because Mr. Hudson was injured by the AGV in
2004, his claim is time barred by the SOR's ten year limitation
on claims.  Correspondingly, any claim by HK for indemnity for
the Hudsons' damages sustained on account of such injury is time
barred by the SOR as well.

In order to determine whether the SOR applies,[7] it must be

---

[7]The parties do not specifically address the choice of law
issue of whether New Jersey's SOR would apply where the
underlying injury occurred in New Jersey, but the contract
containing the indemnification provision requires the application
of Wisconsin law.  Because the Court holds that the SOR does not
apply regardless of the choice of law issue, the issue will not
be addressed.

determined whether the automated material handling system and/or the AGV is an improvement to real property.  If not, then the inquiry stops there, and the SOR does not apply.  If the system and/or the AGV are considered improvements to real property, the SOR does not automatically apply, however.  When a manufacturer has been sued under products liability principles, products liability principles apply to the manufacturer and/or seller of a defective product, and not the SOR, even when the product is used to improve real estate.  Dziewiecki v. Bakula, 824 A.2d 241, 245 (N.J. Super. Ct. App. Div. 2003), aff'd 853 A.2d 234 (N.J. 2004).

This is because New Jersey's SOR focus on the "activities" of persons seeking the SOR's protection.  Dziewiecki v. Bakula, 853 A.2d 234, 237 (N.J. 2004).  When a defendant wears "'"two hats' (undertakes activities covered by the SOR and comes under the product liability statute), and the cause of the injury is attributable to both," the New Jersey Supreme Court has instructed that "the responsibility should be allocated between the two."  Id.  "That portion of the liability that relates to activities that fall within the SOR would not after ten years be actionable, and that portion of the liability that derives from a product liability cause of action would be covered by the limitations period set forth in N.J.S.A. 2A:14-2," which provides for a two-year statute of limitations for products liability claims.  Id.

Here, the Hudsons claimed that HK and/or Eaton violated the

18

New Jersey Products Liability Act ("PLA"), they breached the express and implied warranties of the automated material handling system and the AGV because they did not conform to their representations and were not fit and safe for the intended foreseeable uses, and they committed negligence with the design, assembly, manufacture, distribution, selling, installation, servicing, and maintenance of the system and AGV.  (See generally Amended Compl.)  These allegations sound in products liability. Thus, even if Eaton wore "two hats," and the material handling system and AGV were considered improvements to real property, the Hudsons' claims against Eaton arose out of Eaton's manufacturer-of-product hat.  Indeed, Eaton settled with the Hudsons, presumably because their claims were based on products liability principles.  Had the Hudsons' claims been based on SOR-protected activities, Eaton would have advanced this argument as a complete bar to the Hudsons' claims against it.  Further, had the Hudsons' claims been barred, then neither Eaton nor HK would have faced any liability, and no indemnification issues would have arisen.

     While the Hudsons' claims were still active against Eaton, Eaton had the opportunity to demonstrate which alleged conduct should be allocated to its alleged SOR-protected activities and which conduct should be allocated to its alleged PLA activities. Eaton did not, or could not, do so.  As a result, the SOR cannot be used now to preclude HK's action for indemnification on claims that Eaton itself did not believe the SOR protected.

**CONCLUSION**

For the reasons expressed above, HK is entitled to full indemnification by Eaton for the attorneys' fees and costs HK incurred as a result of defending against the Hudsons' claims. Additionally, HK is entitled to reimbursement of its attorneys' fees and costs associated with prosecuting this indemnification action.  An appropriate Order will be entered, and HK will be instructed to submit a proposed order of judgment.


Dated: December 19, 2007                    s/ Noel L. Hillman

At Camden, New Jersey                       NOEL L. HILLMAN, U.S.D.J.

20